**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PATRICK H. MCGUIRE and LISA ANNE MCGUIRE,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>ANNE MARIE CAREY, et al.,<br><br>　　　　　Defendants. | Case No. 3:20-cv-00249-RCJ-CLB<br><br>**ORDER** |

Plaintiffs seek to temporarily restrain Defendant City of Reno (the City) from enforcing alleged zoning ordinance violations. Plaintiffs contend that the City's enforcement is untimely and therefore unconstitutional, but Plaintiffs have failed to demonstrate sufficient probability of success on the merits at this early juncture. The Court therefore denies the motion.

**BACKGROUND**

Plaintiffs are a married couple. (ECF No. 17 ¶ 1.) On April 3, 2019, Plaintiffs contracted to purchase the property located at 1640 Watt St., Reno, Nevada 89509 (the Property) from the Carey Trust (the Seller) through its trustee Anne Marie Carey for $615,000. (ECF No. 17 Ex. 6.) The Seller listed the Property as having either four or five bedrooms. (*Compare* ECF No. 17 Ex. 1 at 1 (indicating five bedrooms), *with id.* at 4 (indicating four bedrooms).)

In February 2011, the Seller obtained Permit BLD11-03170 (the Permit) to make modifications to the Property. Plaintiffs have attached partial schematics of the building plan for the Permit. (ECF No. 17 Ex. 11.) There is a note on the plan, which states, "This residence is restricted to 2 bedrooms based on available parking. DBM 02/22/11." (*Id.*) However, as mentioned above, the Property currently has four or five bedrooms.

Plaintiffs allege that, during the course of escrow, their real estate agent "pulled the permit history for the [Property] from Defendant City of Reno's website on April 13, 2019," which showed "[the Permit] under the Status Section [was] 'Active/Permit Issued.'" (ECF No. 17 ¶ 6; *see* ECF No. 17 Ex. 12 (screenshot of website listing various permits for the Property, all permits are listed as "Expired," "Cancelled," or "Closed," except the Permit at issue in this case, which is listed as "Active/Permit Issued"). Escrow closed on or about May 10, 2019. (ECF No. 17 ¶ 8.)

Plaintiffs also provide an exhibit they title, "City of Reno – Building and Safety Division – Application Status Trail Report." (ECF No. 17 Ex. 14.) This printout of the City's website gives a more detailed history of the Permit. This report does ultimately note that the Permit was issued on February 23 or 24, 2011 (the website lists the 23rd as a "Sent Date" and the 24th as a "Returned Date"). (*Id.*) But it also notes that the plans for the Permit were "Approved w/ Redlines" by Daniela Monteiro on February 17 or 22, 2011 (the website lists the 17th as a "Sent Date" and the 22nd as a "Returned Date"). (*Id.*) Next to this approval, there is a note, which states, "This residence is restricted to 2 bedrooms based on the available parking on this site. Builder and owners are aware of this restriction." (*Id.*) The report lastly indicates that the permit expired on May 10, 2020. (*Id.*)

On April 19, 2019, the City issued a "Notice of Violation" to the Seller indicating that the Permit would expire because the Seller failed to comply with inspection requirements, with "the last inspection being a sheetrock inspection on March 17, 2011," and zoning restrictions as "MLS listings show the house is selling as a 5 bedroom [sic], the approved building permit for this

addition restricted the total number of bedrooms for the house to 2 bedrooms." (ECF No. 17 Ex. 8.) This is after over eight years of no action on behalf of the City. (*See* ECF No. 17 Ex. 14 (failing to report any action on the permit from February 2011 to May 2019).) Because of these alleged defects, the City claimed that the Seller was in violation of Reno Municipal Code (RMC) § 8.22.90. (*Id.*) According to the City, "All necessary permits must be secured and completed to correct the violations set forth in this notice." (*Id.*)

Plaintiffs allege that they did not learn of this issue until the City emailed them, (ECF No. 17 Ex. 11), regarding the alleged violations. The City then issued a similar "Notice of Violation" on August 28, 2019 addressed to Plaintiffs. (ECF No. 17 Ex. 15.) In this notice, the City claims that Plaintiffs are in violation of International Residential Code (IRC) § R105.1, International Property Maintenance Code (IPMC) § 108.1.4, and RMC § 8.22.090. (*Id.*) It further claims:

> [THE PROPERTY] IS AN UNLAWFUL STRUCTURE AS THE ORIGINAL BUILIDING [sic] PERMIT ISSUED FOR THE ADDITION EXPIRED WITHOUT THE REQUIRED INSPECTIONS AND ADDITIONAL MODIFICATIONS TO THE APPROVED PLANS WERE MADE WITHOUT THE REQUIRED REVISIONS TO THE BUILDING PERMIT. THE ADDITION TO THE HOUSE AT 1640 WATT STREET WAS ORIGINALLY APPROVED UNDER BUILDING PERMIT BLD11-03170. THE BUILDING PERMIT HAS EXPIRED AND IS NO LONGER VALID.

(*Id.* (emphasis in original).) To come into compliance, the City demanded Plaintiffs have a licensed contractor obtain a new building permit by September 30, 2019. (*Id.*) Otherwise, it stated that failure to correct the alleged violations could lead to administrative citations or criminal prosecution "with a maximum penalty of six months in jail and $1000.00 fine." (*Id.*) The City also explained that Plaintiffs could appeal the citation with the Reno City Clerk's Office within ten business days from the date of the citation. (*Id.*)

Initially, Plaintiffs did not challenge this notice through appeal or otherwise but instead attempted to work towards compliance with the City code. In a subsequent letter, the City

acknowledged Plaintiffs "expressed at intent to comply with the corrective actions." (ECF No. 19 Ex. 3.) Plaintiffs confirm this original intention in their Second Amended Complaint. (ECF No. 17 ¶ 62.)

Plaintiffs however further allege that they were unable to come into compliance because "the City continues to press its abusive and constitutionally unjustifiable positions." (ECF No. 17 ¶ 118.) In April 2020, they filed suit against the City (among others). Plaintiffs contend that the City, through its attempt to enforce the zoning ordinances against them, is violating their Eighth Amendment right to be free from cruel and unusual punishment and their Fourteenth Amendment rights to procedural and substantive due process. Plaintiffs have served the City, (ECF No. 8), and the City filed a motion to dismiss a previous complaint, (ECF No. 11).

On June 22, 2020, Plaintiffs (through counsel) wrote a letter to the City requesting that it rescind the notice of violation and issue a formal letter that would clear the residence of any and all permitting issues. (ECF No. 19 Ex. 2.) In their letter, Plaintiffs further requested the City indicate its position on whether any amount of fines were outstanding, whether fines are currently accruing, and the maximum amount of imprisonment to which Plaintiffs are subject, if any. (*Id.*) Three days later, the City responded stating that there were no outstanding fines because of Plaintiffs' previous attempt to comply but it declined to rescind its notice of violation. (ECF No. 19 Ex. 3.) The City also argued that Plaintiffs have not exhausted their claims because they did not appeal the notice of violation. (*Id.*)

Then, on June 29, 2020, the City sent Plaintiffs a document titled "Notice of Intent to Record Notice of Violation." (ECF No. 19 Ex. 1.) This notice reiterates the alleged violations and states, "Pursuant to Reno Municipal code Section 1.05.105 a Notice of Violation will be filed with the Washoe County Recorder's Office if the violations are not corrected within ten (10) business days[, which is July 13, 2020]." This action will place a lien on the Property for "all administrative

fees, administrative fines, abatement costs and other costs provided for in this chapter." RMC § 1.05.400(a). Plaintiffs filed the instant motion after conferring with the City's counsel via email, (ECF No. 19 Exs. 5–8), requesting that the Court enjoin the City from enforcing the alleged violations, including the imposition of fines, recording of the notice of violation, or imprisonment of Plaintiffs.

## LEGAL STANDARD

The standard for granting a temporary restraining order is substantially identical to the standard for granting a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *V'Guara Inc. v. Dec*, 925 F. Supp. 2d 1120, 1123 (D. Nev. 2013). Consequently, a court should grant a temporary restraining order when, the moving party "establish[es] that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008). If the moving party can only establish "serious questions going to the merits," he can still succeed by showing that all three factors weigh towards granting the injunction and the balance of hardships "tips sharply" in that direction. *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

## ANALYSIS

### I.  *Plaintiffs Failed to Show Serious Questions Going to the Merits*

Plaintiffs' only argument that the City cannot enforce the alleged violations is that enforcement is untimely and therefore unconstitutional. Plaintiffs argue that enforcement is untimely based on the following provisions: Section 100.105.5 of Washoe County Building Code (WCBC) (13 April 2012 and September 2013 eds.); Section 105.5 of the IRC (2009 and 2012 eds.); NRS 171.090(2) (listing the limitations periods for commencing criminal actions); and NRS

1   11.190 (listing the limitations periods for commencing civil actions). But the City's enforcement
2   action does not violate any of these provisions.
3         First, Plaintiffs do not cite any authority to say that building permits from the City are
4   governed by the Washoe County Building Code. Furthermore, the provision they cite merely states
5   that the permits issued under the code automatically expire after eighteen months—not that the
6   City could not cause a permit to expire later. (ECF No. 20 Ex. 8.)
7         Second, the cited IRC provision merely states that a permit automatically expires if the
8   work is not completed within 180 days. (ECF No. 20 Ex. 9.) It does not provide a time limitation
9   on the City taking an action against a permit. Indeed, the following section notes that the City has
10  the authority to suspend or revoke a license for violating any provision of the code, ordinance, or
11  regulation without listing any such time limitation. (*Id.*)
12        Third, the failure to comply with the zoning ordinance is an ongoing violation—not a
13  singular incident that occurred in 2011. *See, e.g.*, *State v. Loomis*, No. C6-96-1278, 1997 WL
14  118251, at *2 (Minn. Ct. App. Mar. 18, 1997) (concluding that "noncompliance [with a zoning
15  ordinance] is a continuing violation"); *Brown Cty. v. Meidinger*, 271 N.W.2d 15, 19 (S.D. 1978)
16  (noting that "it would appear that [a zoning] violation is an ongoing daily violation rather than a
17  one-time violation upon which a limitation of action could run"); *City of Fontana v. Atkinson*, 212
18  Cal. App. 2d 499, 509 (Ct. App. 1963) ("No vested right to violate a city ordinance may be
19  acquired by continued violations. The mere fact that, without more, city officials fail to enforce a
20  zoning ordinance against a violator will not estop the city from subsequently enforcing it against
21  him. . . . Since the violation charged was a continuing violation, the statute of limitations does not
22  run."); *cf. Woolsey v. State*, 906 P.2d 723, 726 (Nev. 1995) (recognizing that a statute of limitations
23  does not begin to run for a continuing offense as it "is recommitted each day" (quoting *Campbell*
24  ///

*v. Griffin*, 710 P.2d 70, 72 (Nev. 1985)). Accordingly, Plaintiffs have not shown that the City's threatened enforcement actions are untimely.

Plaintiffs also appear argue that the City could not have legally caused the Permit to expire more than eight years after its issuance but do not provide any authority for this proposition. Furthermore, even if this Court were to assume that the City had somehow waived its right to cause the permit to expire, this is not the only basis on which the City contends that the Property is an "unlawful structure." (ECF No. 17 Ex. 11 (emphasis removed).) Rather, the City also contends that "additional modifications to the approved plans were made without the required revisions to the building permit." (*Id.* (emphasis removed).) This contention is supported by the City's website, (ECF No. 17 Ex. 14), and the approved building plans, (ECF No. 17 Ex. 11), which both note that the Property is only zoned to have two bedrooms but currently has four or five, (ECF No. 17 Ex. 1).

For these reasons, Plaintiff has not demonstrated either a likelihood of success on the merits or even serious questions going to the merits against the City at this early stage of the litigation. This failure is fatal to Plaintiffs' motion; however, the Court will briefly address the remaining elements.

## II.     *Likelihood of Irreparable Harm*

A plaintiff must establish a likelihood of irreparable harm to succeed on a motion for a temporary restraining order. *See Winter*, 555 U.S. at 22. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Accordingly, if Plaintiffs were able to show that the City was likely to violate their constitutional rights, they would have also satisfied this element.

///

///

### III.  *The Degree of Hardship to the Parties*

The Court agrees with Plaintiffs that the balance of hardships favors them. If the City were to enforce the alleged code violations through fines, a lien on the Property, and/or imprisonment, this would impose a hardship on Plaintiffs. And, based on the current record, this hardship would be greater to them than any hardship granting the motion would impose on the City. Consequently, Plaintiffs satisfied this element.

### IV.  *The Public Interest*

If Plaintiffs were correct that the City is violating their constitutional rights, an order enjoining such violation would be in the public interest. *Melendres*, 695 F.3d at 1002. But since Plaintiffs have failed to make this showing, as discussed above, they have not satisfied this element.

### CONCLUSION

IT IS HEREBY ORDERED that Plaintiffs' Motion for a Temporary Restraining Order (ECF No. 19) is DENIED.

IT IS FURTHER ORDERED that the Court will hold a hearing regarding the Motion for the Preliminary Injunction (ECF No. 20) on Tuesday, July 28, 2020 at 10:00 A.M., via Zoom conference.

IT IS SO ORDERED.

Dated July 13, 2020.

_____
ROBERT C. JONES
United States District Judge