1
2
3
4
5
6
                    **UNITED STATES DISTRICT COURT**

7
                        **DISTRICT OF NEVADA**

8
PATRICK H. MCGUIRE and LISA
ANNE MCGUIRE,
9
                                                    Case No. 3:20-cv-00249-RCJ-CLB
            Plaintiffs,
10
                                                    **ORDER**
vs.
11
ANNE MARIE CAREY, et al.,
12
            Defendants.
13

14      Plaintiffs move for a temporary restraining order (TRO) and preliminary injunction

15 enjoining Defendants City of Reno and Joseph Henry (collectively referred to as "the City") from

16 enforcing administrative penalties in response to alleged zoning ordinance violations. On July 28,

17 2020, the Court held a hearing on this matter. For the reasons stated herein, the Court grants a TRO

18 until August 17, 2020,[1] when the Court will hold an evidentiary hearing without oral testimony to

19 resolve factual disputes regarding the propriety of a preliminary injunction.[2]

20
_____
21 [1] All parties have consented to extend the TRO to this date. *See* Fed. R. Civ. P. 65(b)(2) (limiting
   TRO duration to fourteen days unless "the adverse party consents to a longer extension").
22 [2] Plaintiffs desire to call witnesses at the hearing, but the Court notes that they do not have such a
   right even if the they need testimony from the City. *See Stanley v. Univ. of S. California*, 13 F.3d 1313,
23 1326 (9th Cir. 1994) ("[T]he refusal to hear oral testimony at a preliminary injunction hearing is not
   an abuse of discretion if the parties have a full opportunity to submit written testimony and to argue
24 the matter. . . . . [T]he opportunity to conduct discovery was not denied; [Movant] simply did not avail
   herself of it prior to the hearing. . . . . She could have moved, ex parte, for an order shortening time
   within which to conduct depositions.").

**BACKGROUND**

This Court initially denied the motion for a TRO and, for that order, took the facts largely from Plaintiffs' complaint, motion for TRO, motion for preliminary injunction, and their attached exhibits. (ECF No. 29 at 1–5.) Neither party disputes the facts that the Court recited in this order, but both have presented new information. First, Plaintiffs have filed an administrative appeal with the Reno City Clerk's Office in regard to the "Notice of Intent to Record Notice of Violation." (ECF No. 33 Ex. 1.) A hearing before an Administrative Hearing Officer has been scheduled for August 18, 2020. (*Id.*) In light of this appeal, the City claims that the recording has been stayed. (ECF No. 33 at 2:18–19.)

Second, Plaintiffs present evidence of an ethics complaint that AMCB, LLC (d/b/a "Rubbish Runners") issued against City of Reno Sustainability Manager Lynne Barker in or around February 2017 in their reply. They claim that the Seller's trustee, Defendant Carey, owns this company and that this complaint generated personal animus against Defendant Carey, resulting in the instant enforcement actions.

Third, Plaintiffs have presented a declaration of Plaintiff Patrick McGuire, (ECF No. 44), in which he attests to the following facts: After receiving a Notice of Violation in April 2019, Defendant Carey initially attempted to remedy the alleged permitting issue and was told by the City's agent, Mr. Chris Pingree, that "'it would cost $1500 as long as [there was] not too much change from the original permit.' This would pay for 'administrative fees and the final inspection.'" On July 17, 2019, Defendant Henry told Plaintiffs the house could only be a two-bedroom home and to discuss this issue with Mr. Pingree, who requested the "as-built" plans for comparison with the "as-permitted" plans. On August 28, 2019, the City issued the Notice of Violation, but Defendant Henry stated that the City would not enforce the action "as long as [Plaintiffs] worked with [Mr. Pingree] and resolved the issues."

On September 6, 2019, Plaintiffs presented Mr. Pingree with the "as-built" plans, which Plaintiffs had commissioned, and he said that Plaintiffs would have to acquire new permits. Mr. Pingree "did not know" why new permits were required even though he had previously stated that Plaintiffs "could use the original permits." Two weeks later, Plaintiffs met with "Patricia and Angela for a Plan review. They both said the plans looked good and told me no money was needed because the 'as built' plans showed no changes from the 'as permitted' [plans]."

On October 7, 2019, the City emailed Plaintiffs saying the permits "were ready and there was a filing fee of $371.25" but, later that day, stated the permits "were on hold." In response, Plaintiff called the City and spoke with Angela. During that conversation, she stated that the property "could only be a 2 bedroom house because of parking and that the house envelop[e] was too large," and that she did not know how the original permit and building envelope had been approved.

In November, Plaintiffs asked Mr. Pingree how to proceed, and he stated that they should talk to the city attorney. Plaintiffs did not receive any response to their attempts to arrange a meeting with the city attorney. When Plaintiffs contacted the Seller, she told them that she had gotten the permit approved by labeling two of the rooms as an office and a master closet. Despite those labels, the rooms fell within the City's definition of a "bedroom," as provided by Angela, although when Plaintiff Mr. McGuire asked her about the labels, she still could not tell him how the Permit had been approved. "[I]n the City of Reno Building and Safety Application status report it says this can be a four bedroom house because it has the parking spaces."[3] While not explicitly stated, it appears that the City is demanding that Plaintiffs rebuild the house to be smaller with two bedrooms. *See Id.* at ¶ 46 ("To transform this 5 bedroom house back to a 2 bedroom house would cause serious financial issues with both having to alter the already existing house and in its resale

---

[3] Plaintiffs have not attached this alleged document.

value."). Furthermore, the City refused to indicate how they discovered the alleged issue in the permits and why it is pursuing enforcement now.

Fourth, Defendant Carey has presented an affidavit with some additional facts. She swears to the following: She was unaware of any zoning ordinance violation until April 24, 2019, when she received the Notice of Violation dated April 19, 2019. Later that month, the City informed her that it was just a "minor 'administrative issue' and that it was probably only a matter of visual inspections to close out the permit and essentially that all that was needed was the payment of administrative fees and the final inspection." She further states, "It is my understanding that the City of Reno is now asking the new owners to bring the property into compliance with today's code, even though it was completed in 2011 and the only thing that apparently was not done was a final inspection by the City of Reno." Lastly, the Property was listed as a four-bedroom home at the time that Defendant Carey Trust purchased it in 2007, and Defendant Carey has always paid property taxes as a four-bedroom house as the Washoe County Assessor's Office lists the Property as such.

In the operative complaint, Plaintiffs raise only two claims against the City: one based on their right to be free from cruel and unusual punishment guaranteed by the Eighth Amendment and the other based on their rights to substantive and procedural due process guaranteed by the Fourteenth Amendment. (ECF No. 17 at 37–43.) In their original motion for a preliminary injunction, the entirety of Plaintiffs' argument that they will succeed on the merits is the following:

> [Plaintiffs] are highly likely to succeed on the merits of the constitutional civil rights lawsuit against Defendants City of Reno and Joseph Henry as the City's enforcement action is clearly untimely.
>
> The City issued the subject building permit in February 2011, but then took no further action of any kind – no hearings, no inspections, no renewal permits, did not close the permit and left it open and active etc. – for over eight years. The City has been on notice of the problem since at [sic] February 2011.

///

This stale enforcement action violated, and continues to violate:

1. Section 100.105.5 of Washoe County Building Code (13 April 2012 and September 2013 eds.) . . . .
2. Section 105.5 of the International Residential Code (2009 and 2012 eds.) . . . .
3. The limitations periods for commencing criminal (NRS 171.090(2)) and civil actions (NRS 11.190).

(ECF No. 20 at 6–7 (citations omitted).) Plaintiffs did not mention any specific right let alone provide any analysis of how the City violated that right. They also made a substantially similar argument in their motion for a TRO, and the Court rejected it on the ground that the cited provisions did not render the enforcement actions untimely. (ECF No. 29 at 5–7.) They now concede that the Court correctly ruled on this issue. (ECF No. 37 at 3.) In their reply, they raise two new claims—laches and vindictive enforcement in violation of the Equal Protection Clause of the Fourteenth Amendment. (*Id.* at 3–8.) Based on Plaintiffs' failure to raise these arguments until their reply, the City moves to strike them. (ECF No. 40.) In its response, the City also argues that the motion is moot because of the administrative stay and that Plaintiffs fail to show satisfy their burden.

## LEGAL STANDARD

The standard for granting a temporary restraining order is substantially identical to the standard for granting a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *V'Guara Inc. v. Dec*, 925 F. Supp. 2d 1120, 1123 (D. Nev. 2013). Consequently, a court should grant a temporary restraining order where, the moving party "establish[es] that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008). If the moving party can only establish "serious questions going to the merits," he can still succeed by showing that all three factors weigh towards granting the injunction and the balance of hardships "tips sharply" in

1    that direction. *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir.

2    2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

3                                          **ANALYSIS**

4    *I.     The Motion is not Moot*

5            The City argues that the motion is moot because they claim that the recording of the lien

6    has been stayed pending the administrative appeal. While Plaintiffs have not disputed that they

7    have obtained a stay pending the appeal of the City recording the lien on the Property, this would

8    not moot the entirety of Plaintiffs' requested relief—that is a stay of all enforcement actions

9    pending this case. For mootness, "the question is not whether the precise relief sought at the time

10   the application for an injunction was filed is still available. The question is whether there can be

11   *any* effective relief." *Wild Wilderness v. Allen*, 871 F.3d 719, 724 (9th Cir. 2017) (*Or. Natural Res.*

12   *Council v. U.S. Bureau of Land Mgmt.*, 470 F.3d 818, 820 (9th Cir. 2006)). As it is possible that

13   the current stay will not last the entirety of this case, the motion is not moot.

14   *II.    Likelihood of Success on the Merits*

15           Initially, the Court will address the motion to strike. Plaintiffs have not properly raised the

16   claims of laches and vindictive enforcement because they are not in the original motion or in the

17   operative complaint. First, a court may not grant a preliminary injunction on claims that are not

18   raised in the operative complaint because the likelihood of success cannot be based on claims that

19   are not at issue. *See, e.g.*, *Krieger v. Nationwide Mut. Ins. Co.*, No. CV11-01059-PHX-DGC, 2012

20   WL 1029526, at *8 (D. Ariz. Mar. 27, 2012). If Plaintiffs intend to rely on these claims for this

21   motion, then they must amend their complaint to include them.

22           Second, while courts do not need to consider arguments raised for the first time in a reply,

23   *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007), they may do so as long they provide an

24   opportunity for the other party to respond, *see Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir.

1996). Because the Court is allowing for discovery, further filings, and an evidentiary hearing, it denies the motion to strike and will entertain further argumentation on these claims.

At the July 28 hearing, Plaintiffs presented an argument that the Court finds has some merit—that is, the City deprived Plaintiffs of their procedural due process right by causing the 2011 Permit to expire without providing them with adequate process.[4] "To obtain relief on § 1983 claims based upon procedural due process, the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Guatay Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957, 983 (9th Cir. 2011) (quoting *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir.1993)). Here, it appears that Plaintiffs had a property interest in this permit when the City caused the Permit to expire as Plaintiffs had already contracted to purchase the Property.

Some facts regarding this claim however are at issue, including but not limited to, the following:

- Whether the Notice of Violation from August 2019 provided Plaintiffs the opportunity to challenge the deprivation of the permit.
- Whether the issued permit allowed for all of the modifications to the Property.
- Whether the City's website provided adequate notice of any defects in the Permit.

Because of these disputes, as well as others, the Court granted a temporary restraining order to allow for additional time for limited discovery and further argumentation.

///

///

///

---

[4] This Court does not currently comment on the merits of the other cause of actions, except that it notes that if Plaintiffs are to show a likelihood of success on the merits of their claims against Defendant City of Reno, then they will also have to show evidence for *Monell* liability. This is an issue for which they have not provided any evidence in support.

### III.   *Balance of Hardships*

Plaintiffs have shown that the balance of hardships tips in their favor. The City relies on its need for compliance with the zoning codes. But Plaintiffs are experiencing threats of fines and a lien on their property. The Court finds that Plaintiffs' hardship is greater.

### IV.   *Irreparable Harm*

There is Ninth Circuit caselaw holding that any constitutional violation is an irreparable harm. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Thus, this element is satisfied if Plaintiffs show that they are likely to succeed on the merits of their constitutional claims.

### V.   *Public Interest*

As with irreparable harm, the Ninth Circuit has held that enjoining a constitutional violation is within the public interest. *Melendres*, 695 F.3d at 1002. Accordingly, this element is also satisfied if Plaintiffs show that the City is infringing on their constitutional rights.

///
///
///
///
///
///
///
///
///
///

**CONCLUSION**

IT IS HEREBY ORDERED that parties shall confer and submit a proposed order by 5:00 PM, July 31, 2020. This proposed order shall comply with the Court's directions stated in the hearing held on July 28, 2020.

IT IS FURTHER ORDERED that the Motion to Strike (ECF No. 40) is DENIED.

IT IS SO ORDERED.

Dated July 29, 2020.

_____
ROBERT C. JONES
United States District Judge